FILED

11/18/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: PR 20-0262

FILED

NOV 18 2020

Bowen Greenwood
Clerk of Supreme Court
State of Montana

COMMISSION ON PRACTICE
OF THE SUPREME COURT
STATE OF MONTANA

NOV 09 2020

## BEFORE THE COMMISSION ON PRACTICE
## OF THE SUPREME COURT OF THE STATE OF MONTANA

| | |
|---|---|
| IN THE MATTER OF | ) |
| | ) Supreme Court Cause No. PR 20-0262 |
| JENNIFER WEBBER, | ) Commission File Nos. 19-094 and 20-010 |
| | ) |
| An Attorney at Law, | ) **FINDINGS OF FACT, CONCLUSIONS** |
| | ) **OF LAW AND RECOMMENDATION** |
| | ) **FOR DISCIPLINE** |
| Respondent. | ) |

A hearing on Respondent Jennifer Webber's *Conditional Admission and Affidavit of Consent* ("*Conditional Admission*") came before an Adjudicatory Panel of the Commission on Practice on October 15, 2020 by virtual means. Panel members participating were Chair Ward "Mick" Taleff, Brad Belke, Michael Black, Pat DeVries, Jean Faure, Lori Maloney, Lois Menzies, Dan O'Brien, Randy Ogle and Heather Perry. The Office of Disciplinary Counsel was represented by Chief Disciplinary Counsel Pam Bucy. Respondent appeared *pro se*. Based upon the *Conditional Admission and Affidavit of Consent*, as well as the statements and information presented at the hearing, the Commission makes the following factual findings, reaches the following conclusions of law and enters its recommendation for Discipline.

- 1 -

## FINDINGS OF FACT

1. Jennifer Webber ("Webber"), was admitted to the practice of law in Montana in 2013, at which time she took the oath required for admission and agreed to abide by the Rules of Professional Conduct, the Disciplinary Rules adopted by the Supreme Court, and the highest standards of honesty, justice and morality, including but not limited to, those set forth in parts 3 and 4 of Chapter 61, Title 37, Montana Code Annotated.

2. The Montana Supreme Court has approved and adopted the Montana Rules of Professional Conduct ("MRPC"), governing the ethical conduct of attorneys licensed to practice in Montana, which Rules were in effect at all times mentioned in the *Complaint* filed in this matter.

3. The *Complaint* on which the *Conditional Admission* is based followed grievances by James Weber and his spouse (collectively "the James" to avoid confusion due to the similarity with Respondent's name), and Janice and Randy Gill ("the Gills").

4. The James' matter involves the following admitted facts:

a. The James retained Webber in March 2019 to assist in their estate planning. After two meetings discussing their needs, the James paid Webber a $2,700 retainer and gave her pertinent and necessary information to begin drafting their estate planning documents.

b. The James attempted to contact Webber by phone and email on

- 2 -

numerous occasions, but she failed to respond to them until May 4, 2019, after they requested a refund of the unearned portion of the retainer and the return of their original documents.

c. When she spoke with the James on May 4, 2019, Webber informed them of her recent health issues and offered to deliver the final draft of their estate planning documents. The James agreed to meet on the day Webber suggested and requested that she confirm the meeting with them. Webber failed to respond to the James' email, failed to meet with them, and failed to provide the documents she asserted were complete.

d. The James and their daughter made several additional attempts to contact Webber, without success. In their last correspondence, the James demanded a refund of the unearned retainer and their original documents. Webber failed to respond.

e. After collecting $2,700 from the James, Webber failed to complete the legal service for which she was hired and failed to refund all or a portion of the retainer to the James, despite their requests.

f. Webber failed to prepare or complete the estate planning documents for the James and failed to provide any work product or send them a billing statement. As a result, the James were forced to hire another lawyer, who prepared their estate planning documents within days and charged $855.

g. Webber informed the James she was having health problems which

caused the delay and lack of communication. Once she became aware her health issues impaired her ability to represent the James diligently and to reasonably communicate with them, Webber was obligated to withdraw from representing them.

h.      The James sought and obtained a default judgment against Webber for return of their full retainer payment and documents, plus costs expended, for a total of $2,805. Subsequent to the filing of the *Complaint* in this matter, Webber paid the judgment in full and returned the copies of the essential documents provided to her by the James.

i.      Webber failed to provide a written fee agreement or other writing memorializing the fee arrangement, including the scope of representation and basis or rate of the fee, in violation of Rule 1.5(b), MRPC.

j.      After the James paid Webber a $2,700 retainer in March 2019, she did not deposit any of the funds into her IOLTA trust account.

5.      The Gills matter involves the following admitted facts:

a.      In April 2019, the Gills hired Webber to assist them in seeking guardianship of Randy Gill's mother, L.M.G., and conservatorship over her estate. Webber's first meeting with the Gills was on April 8, 2019, on a Friday afternoon. The Gills paid Webber $100 in cash at the initial meeting for the filing fee and subsequently paid Webber $2,500 by credit card for her retainer. The Gills expressed the matter was urgent due to specific family dynamics and they were

- 4 -

already acting as L.M.G.'s primary caregivers.

b. Webber prepared the documents over the weekend, and on April 11, 2019, filed the necessary paperwork to initiate the guardianship and conservatorship on the Gills' behalf. The court ordered the appointment of a physician, visitor attorney and Gills as temporary co-guardians and co-conservators. Letters of Guardianship and Conservatorship were obtained on April 12, 2019. The temporary conservatorship/guardianship would expire October 12, 2019.

c. Over the next six months, the Gills attempted to contact Webber numerous times by phone calls, text messages and emails. Webber did not respond to any communications during that time.

d. On September 12, 2019, Webber filed a motion to extend the temporary guardianship, which the Court granted on September 24, 2019, and scheduled a hearing for November 7, 2019. Webber failed to notify Gills of the hearing.

e. The Gills were forced to hire and pay a new attorney, Andrew Billstein ("Billstein") to complete the guardianship/conservatorship matter. Billstein's firm charged the Gills $500 plus costs.

f. On October 25, 2019, Billstein attempted to contact Webber and requested that she sign and return an attached notice of substitution of counsel. He indicated time was of the essence. Webber failed to timely respond and Billstein

- 5 -

was forced to seek substitution without her cooperation, causing delay.

g. Billstein successfully completed the guardianship and conservatorship matter after the December 5, 2019 hearing, when Gills were appointed full co-guardians and co-conservator.

h. On April 5, 2019, Webber collected a $2,500 retainer from the Gills but failed to complete the work for which they hired her to do. After Billstein suggested she refund the unearned portion of the retainer and after the Gills requested a refund of at least $2,000, Webber failed at the time to refund any portion of the retainer despite knowing the Gills were due at least a partial refund. After the filing of the *Complaint* in this matter, Webber returned the full retainer of $2,500 to the Gills.

i. Webber asserts her health issues affected her ability to complete the legal services for which she was hired and to respond to Gills' and Billstein's attempts to contact her, causing delay.

j. After Gills paid her a $2,500 retainer in April 2019, Webber did not deposit any of the funds into her IOLTA trust account.

6. Webber tendered her admissions in exchange for the following discipline, to which the ODC concurred:

a. An indefinite suspension for a minimum of seven (7) months;

b. Prior to reinstatement, she must comply with the following conditions:

i. Undergo a mental health evaluation by a licensed clinical

- 6 -

psychiatrist or psychologist at her own expense and submit the evaluation report to the ODC;

ii.     Provide releases to allow the ODC and her mental health care providers to discuss the reports and findings and her continued treatment progress; and,

iii.     Comply with Rules 30 and 32, MRLDE.

c.     Upon reinstatement, she must comply with the following condition for a period of three (3) years:

i.     Comply with all recommended treatment plan(s) of her mental health care providers and continue treatment for mental health issues pursuant to the recommended treatment plan(s);

ii.     Continue to consult with the Lawyers' Assistance Program (LAP) Coordinator and file with the ODC his or her written recommendations for the means by which Webber can best address the emotional and mental health issues she had been facing in order to allow her to effectively and ethically return to the practice of law;

iii.     Continue to meet with Mr. Larson, his successor or delegate monthly by phone or in person and/or attend a LAP meeting held in the nearest city to her weekly or as often as the meetings take place;

iv.     Participate in the ODC Mentorship Program and complete the supervised task checklist;

v. Not engage in the solo practice of law without written approval of her mentor, her health care providers and the ODC, and upon submitting written, adequate procedures relative to case management and adhering to those procedures; and

vi. Obey all State and federal laws and the Montana Rule of Professional Conduct, for which any violation of either will constitute violation of a court order and will result in further discipline.

d. Payment of costs incurred by the Office of Disciplinary Counsel and the Commission on Practice in connection with this matter.

## CONCLUSIONS OF LAW

Based upon the admitted facts set forth above, the Commission reaches the following legal conclusions:

1. All jurisdictional and procedural requirements for this proceeding have been met.

2. Webber's failure to carry out the representation of the James for which they retained her with reasonable diligence violated Rule 1.3 MRPC.

3. By failing to reasonably communicate with the James and by failing to respond to their inquiries, Webber violated Rule 1.4, MRPC.

4. By collecting an unreasonable fee from the James and the Gills and failing to complete legal services for which she was hired to do, Webber violated Rule 1.1.5(a) MRPC.

4. By her failure to timely return the James' original documents and refund the unearned fees, Webber violated Rule 1.16(d), MRPC.

5. By failing to provide a written fee agreement or other writing memorializing the fee arrangement, including the scope of representation and basis or rate of the fee, Webber violated Rule 1.5(b), MRPC.

6. Once she became aware her health issues impaired her ability to represent the James and the Gills diligently and to reasonably communicate with them, Webber was obligated to withdraw from representing them. Her inability and failure to do so violated Rule 1.16(a) MRPC.

7. Webber's failure to deposit the James' and the Gills' retainers into her IOLTA trust account and maintain them in the account until earned violated Rules 1.15 and 1.1, MRPC.

8. Webber's failure to act with reasonable diligence or make reasonable efforts to expedite the Gills' petition for guardianship/conservatorship consistent with their interests violated Rule 1.3 and 3.2 MRPC.

9. Webber's failure to keep her clients reasonably informed or to respond to their inquiries about the status of the matter violated Rule 1.4 MRPC.

10. Webber's failure to return property belonging to the Gills (a retainer refund of the unearned fees) after her representation was terminated violated Rule 1.16(d), MRPC.

## RECOMMENDATION FOR DISCIPLINE

The conditions on which Webber tendered her admission are, in view of the facts, those which the Commission likely would have recommended had the matter proceeded to a full contested hearing. Webber is to be commended for recognizing the severity of her failures and the need to address them appropriately. The Commission believes the conditions of the tender will allow her to do that and, hopefully, at some time successfully resume the practice of law as a credit to herself, her clients and the profession.

Accordingly, the Commission recommends that the tendered admission be accepted and Webber's discipline be consistent with the conditions outlined in her *Conditional Admission*.

Respectfully submitted this 9th day of November, 2020.

COMMISSION ON PRACTICE OF THE
SUPREME COURT OF THE STATE OF MONTANA

By _____
Ward E. "Mick" Taleff, Chair

- 10 -

# CERTIFICATE OF SERVICE

I certify that I emailed a true copy of the foregoing Findings of Fact, Conclusions of Law and Recommendation for Discipline this 10th day of November, 2020, as follows:

Jennifer Webber
124 North 29th St., Apt. 401
Billings, MT 59101
jennifer@webberpllc.com

Pamela D. Bucy
Chief Disciplinary Counsel
P.O. Box 1099
Helena, MT 59624-1099
pbucy@montanaodc.org

_Shelly Smith_
Shelly Smith, Office Administrator